# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| DARRYL KINNEY, ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | 12-cv-6810 |
| ) | |
| CITY OF WAUKEGAN ) | Judge John Z. Lee |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Darryl Kinney, proceeding *pro se*, has filed an eight-count Third Amended Complaint against various Defendants. Kinney alleges that Defendants stalked and harassed him, prevented him from getting a job, allowed his car to be vandalized, invaded his privacy, attempted to murder him, committed hate crimes, forced him to go through divorce proceedings, forcibly evicted him, and falsely arrested and imprisoned him. Plaintiff alleges violations of 42 U.S.C. §§ 1983 and 1985, federal and common law conspiracy, false arrest and imprisonment, invasion of privacy, and trespass. Defendant the City of Waukegan[1] has moved to dismiss Kinney's claims under Rule 12(b)(6). Plaintiff has filed various responses and surreplies. In these responses and surreplies, Plaintiff restates the general outline of facts contained in the Third Amended Complaint, adds additional legal and evidentiary materials, including letters and affidavits, and argues that his claims survive. For the reasons stated herein, the City of Waukegan's motion to dismiss is granted.

---

[1] Plaintiff moved to withdraw his Third Amended Complaint to the extent that it asserted claims against Lake County, a previous named Defendant. *See* Pl.'s Mot. Remove. The Court granted Plaintiff's request. *See* 7/2/14 Min. Entry.

1

# I. Factual Background[2]

## A. Stalking and Harassment of Plaintiff

Plaintiff's Third Amended Complaint generally alleges that, between the years of 2004 and 2014, Plaintiff suffered harassment, stalking, invasions of privacy, vandalism, and adverse legal proceedings at the hands of various government agencies, police officers, judges, municipalities, including Defendant City of Waukegan, and other individuals. *See generally* Pl.'s 3d Am. Compl. The stalking started in 2007, perpetuated by people claiming to be looking for money from Plaintiff on behalf of a Waukegan Police Officer. *See id.* ¶ 3. The stalking continued throughout 2008 and 2009 in Wisconsin, after Plaintiff had filed an EEOC charge and a FOIA request; the perpetrators then included the U.S. Military. *See id.* ¶ 4. During this same time, Plaintiff worked at Sears, and his work truck was ransacked by another employee in a "money hunting operation." *See id.* ¶ 5. Later, in 2009, in Virginia, Plaintiff's car was damaged and the Virginia Police were called to the scene. *See id.* ¶ 6. The police reported the incident but told Plaintiff that they would not be doing anything further. *See id.* Plaintiff was also the subject of potential hate crimes in Virginia, where unspecified Defendants removed his brake pads and screws from the front right wheel of his car. *See id.* ¶ 7. Police officers from Virginia allegedly filed a report detailing the tampering with Plaintiff's car. *See id.* ¶ 8.

In 2010, Plaintiff, now residing in Georgia, complained to Atlanta Police Chief Turner about this harassment, informing Turner that the U.S. Military, federal judges from Chicago, and the FBI were threatening and stalking him. *See id.* ¶ 9. In 2010, presumably also in Georgia, Plaintiff was arrested by federal agents from Chicago and an "arresting officer" from Sandy

---

[2] When reviewing a defendant's motion to dismiss, the Court assumes the alleged facts in the complaint are true and draws all possible inferences in a plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

Springs. *See id.* ¶ 10. According to Plaintiff, these federal agents were watching him from an upstairs apartment and monitoring his personal webpage. *See id.* Plaintiff's boss in Georgia, Jason Bermstrom, told Plaintiff that the federal government directed him to fire Plaintiff, after first stating that this direction came from the State of Florida. *See id.* ¶ 14.

A year later, in 2010, FBI agents came to Plaintiff's mother's house in Topeka, Kansas, using Plaintiff's son's arrest record to harass Plaintiff. *See id.* ¶ 11. At that time, Plaintiff was the victim of further potential hate crimes, including another attempted murder, this time at the hands of the U.S. Military, who tampered with his work truck. *See id.* ¶ 15. Around this time, the Topeka Police issued a report of illegal stalking operations from Waukegan and Chicago. *See id.* In 2011, a counselor told Plaintiff to take his daughter to the Department of Children and Family Services ("DCFS") in Illinois. *See id.* ¶ 12. But Plaintiff apparently could not get a report from DCFS, and instead was set up by fake records created by his wife after their third divorce. *See id.* Plaintiff believes that the signature on these records was also forged. *See id.* Plaintiff destroyed the records. *See id.* Plaintiff's children were allegedly mistreated and kept from him during this time. *See id.* ¶ 16.

Plaintiff alleges that "all [p]arties [f]ederal and state" have kept him from employment. *See id.* ¶ 13. Plaintiff further alleges that judges have instituted and maintained illegal divorce actions over him to entrap him and extort money from him. *See id.* ¶ 16. During this entire period, Waukegan Police have "stalked [Plaintiff] everywhere he goes." *See id.* ¶ 17. Plaintiff asserts he has photographed the police officers stalking him. *See id.* ¶¶ 17–18.

### B. Procedural Background

The Court previously dismissed Plaintiff's Complaint. *See* Aug. 14, 2013 Mem. Op. Ord. Plaintiff filed an Amended Complaint on October 3, 2013. The City of Waukegan moved to

3

dismiss this Amended Complaint on November 4, 2013. Plaintiff responded to this motion by filing a Second Amended Complaint on December 5, 2013. The City of Waukegan then moved to dismiss this Second Amended Complaint. Plaintiff responded by moving for leave to file a Third Amended Complaint. The Court granted Plaintiff's motion and struck the City of Waukegan's motion to dismiss as moot. *See* 5/28/14 Min. Entry. The City of Waukegan has subsequently moved to dismiss Plaintiff's Third Amended Complaint.

## II. Legal Standard

To survive a motion to dismiss pursuant to Rule 12(b)(6), the complaint must "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The factual allegations in the complaint must at least "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555. The Court must accept as true all well-pleaded allegations in the complaint and draw all possible inferences in the plaintiff's favor. *See Tamayo*, 526 F.3d at 1081. Mere legal conclusions, however, "are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679.

## III. Analysis

### A. Plaintiff's Claims Under 42 U.S.C. § 1983 Must Be Dismissed (Counts I, II, III, IV)[3]

The City of Waukegan argues that Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed because it is not liable under *respondeat superior* principles and Plaintiff fails to

---

[3] To the extent that Plaintiff states these claims under the Rhode Island Constitution, cited in Plaintiff's Third Amended Complaint, they must also be dismissed. None of the events detailed in Plaintiff's Third Amended Complaint took place in Rhode Island. Since this case was filed in Illinois, Illinois' choice of law doctrine applies. *See Jupiter Alum. Corp. v. Home Ins. Co.*, 225 F.3d 868, 873 (7th Cir. 2000). Under Illinois law, "the local law of the state where the injury occurred should determine the rights and liabilities of the parties, unless Illinois has a more significant relationship with the occurrence and with the parties." *See Hardly Able Coal Co. v. Int'l Harvester Co.*, 494 F. Supp. 249, 250 (N.D. Ill. 1980) (quoting *Ingersoll v. Klein*, 262 N.E.2d 593, 595 (1970)). Though Plaintiff's Third Amended Complaint mentions Illinois, Wisconsin, Georgia, and Virginia, it does not mention Rhode Island. The Court can discern no basis under Illinois' choice-of-law rules to apply Rhode Island law.

identify a policy or custom of the City of Waukegan sufficient for municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978). Plaintiff does not respond directly to these arguments. Instead, Plaintiff references photographs of police officers who were stalking him attached to his Second Amended Complaint. Plaintiff also appends an unattributed "Law Enforcement Code of Ethics" to the end of his Memorandum in Opposition and alleges that members of the Waukegan Police Department have forgotten this code.

The photographs referenced by Plaintiff would be insufficient to justify liability under *Monell* because a municipality cannot be held liable under 42 U.S.C. § 1983 on *respondeat superior* principles.[4] *League of Women Voters of Chic. v. City of Chic.*, 757 F.3d 722, 727 (7th Cir. 2014). "There are only three ways in which a municipality can be held liable under section 1983 . . . . There must be: (1) an express policy that would cause a constitutional deprivation if enforced; (2) a common practice that is so widespread and well settled that it constitutes a custom or practice; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." *Id.*

Under this standard, Plaintiff's claims under 42 U.S.C. § 1983 must be dismissed. The only policy identified by Plaintiff is the previously mentioned "Law Enforcement Code of Ethics." There are, however, a number of fatal deficiencies. First, as a procedural matter, the "Code of Ethics" is not referenced or otherwise identified in Plaintiff's Third Amended Complaint. "[D]ocuments attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint *and* are central to his claim." *Wright v. Assoc. Ins. Cos. Inc.*, 29 F.3d 1244, 1248 (7th Cir. 1994) (emphasis added). "This rule—which

---

[4] Additionally, upon reviewing the Second Amended Complaint, the Court finds no photographs attached. *See generally* Pl.'s 2d Am. Compl. The Second Amended Complaint does contain a link to a website, which, upon the Court's review, does contain a collection of photographs. But it is unclear that those pictured are City of Waukegan Police Officers. Even if they were, as explained above, the City of Waukegan cannot be held liable under *respondeat superior* principles for their actions.

typically applies to attachments to motions to dismiss—logically extends to documents attached to a plaintiff's response." *Metz v. Joe Rizza Imports, Inc.*, 700 F. Supp. 2d 983, 988 (N.D. Ill. 2010). Because the "Code of Ethics" is not referenced in Plaintiff's Third Amended Complaint, the Court may not properly consider it to determine if Plaintiff has stated a *Monell* claim.

Even if the Court were to consider the "Code of Ethics," however, Plaintiff still has not stated a claim because he fails to allege any connection between the "Code of Ethics" and the City of Waukegan. It is unclear if the City of Waukegan has promulgated or adopted the "Code of Ethics." And of course, if it has not, the City of Waukegan cannot be liable for any failure to enforce it. Relatedly, Plaintiff must plead an "affirmative link" between the policy or custom and the alleged constitutional violations. Plaintiff only elaborates on the "Code of Ethics" by arguing that "some have forgotten them." *See* Pl.'s Mem. Opp'n. 1. Again, it is unclear that "some" refers to City of Waukegan or its police officers. Even assuming "some" did refer to City of Waukegan police officers, Plaintiff does not plead any facts establishing a widespread and persistent failure of the City of Waukegan to follow its own policy, much less that this failure was the "direct cause" or "moving force" behind any alleged *constitutional* violation. *See Minix v. Canarecci,* 597 F.3d 824, 832 (7th Cir. 2010); *see also Woodward v. Corr. Med. Servs. of Illinois, Inc.*, 368 F.3d 917, 929 (7th Cir. 2004) ("[A] single violation of federal rights can trigger municipal liability if the violation was a 'highly predictable consequence' of the municipality's failure to act."). Consequently, Counts I, II, III, and IV are dismissed with prejudice.

### B. Plaintiff Fails To State a Claim for Conspiracy (Count V)

Plaintiff also brings a claim for conspiracy in violation of federal statutes. As an initial matter, it is unclear if Plaintiff is stating his claim for conspiracy under federal or state law, and

6

if the former, under 42 U.S.C. § 1983 or § 1985(3).[5] But under any basis, Plaintiff's conspiracy claim does not survive.

"To state a Section 1983 claim through a conspiracy theory, a plaintiff must allege that '(1) a state official and private individual(s) reached an understanding to deprive the plaintiff of his constitutional rights; and (2) those individual(s) were willful participant[s] in joint activity with the State or its agents.'" *Ibarra v. City of Chicago*, 816 F. Supp. 2d 541, 552 (N.D. Ill. 2011) (quoting *Reynolds v. Jamison,* 488 F.3d 756, 764 (7th Cir. 2007)). But "[n]either 'a bare allegation of conspiracy,' nor 'mere suspicion that persons adverse to the plaintiff had joined a conspiracy against him or her[,] ... [is] ... enough to survive a motion to dismiss for failure to state a claim.") *Id.* at 552–53 (quoting *Cooney v. Rossiter,* 583 F.3d 967, 971 (7th Cir. 2009)). To advance past the pleading stage, a plaintiff must allege the parties, the purpose, the approximate date of the conspiracy, and the nature of the alleged conspiratorial agreement. *Id.* (citing Seventh Circuit cases). The Third Amended Complaint does not identify a state official and a private individual working together. It also does not identify the purpose of the alleged conspiracy, the approximate time during which the conspiracy occurred, and any conspiratorial agreement, much less its nature. In short, the Third Amended Complaint does not plead any of the requisite elements of conspiracy.

Any claim of conspiracy under 42 U.S.C. § 1985(3) likewise fails. "A § 1985 conspiracy claim may be brought when 'two or more persons . . . conspire . . . for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws.'"

---

[5] Plaintiff's Second Amended Complaint does contain a section that indicates he is proceeding on his conspiracy claim under 42 U.S.C. § 1985(3). *See* Pl.'s 2d Am. Compl. 1. But this section does not match up with Plaintiff's enumerated counts. And Plaintiff's enumerated count for conspiracy does not delineate the legal basis under which the conspiracy claim proceeds. Because "district courts have a special responsibility to construe pro se complaints liberally," *Kaba v. Stepp*, 458 F.3d 678, 687 (7th Cir. 2006), the Court will examine Plaintiff's conspiracy claims under both 42 U.S.C. § 1983 and § 1985(3).

*Tillman v. Burge*, 813 F. Supp. 2d 946, 977 (N.D. Ill. 2011) (quoting 42 U.S.C. § 1985(3)). Again, the Third Amended Complaint does not identify two or more people who conspired. And it does not otherwise meet the pleading requirements for a conspiracy claim.

Lastly, any conspiracy claim Plaintiff intends to bring under Illinois law also would be deficient. Under Illinois law, "[c]ivil conspiracy consists of (1) an agreement between two or more persons (2) for the purpose of accomplishing by some concerted action either an unlawful purpose or a lawful purpose by unlawful means, and (3) some tortious or illegal act by a party to the agreement in furtherance of the agreement." *Brooks v. Ross*, No. 08 CV 2417, 2008 WL 5082995, at *7 (N.D. Ill. Nov. 25, 2008), *aff'd*, 578 F.3d 574 (7th Cir. 2009) (quoting *Ill. Non-Profit Risk Mgmt. Ass'n v. Human Serv. Ctr.,* 884 N.E.2d 700, 711 (Ill. App. Ct. 2008)). In order to survive a motion to dismiss, "the complaint must contain more than the conclusion that there was a conspiracy, it must allege specific facts from which the existence of a conspiracy may properly be inferred." *Fritz v. Johnston,* 807 N.E.2d 461, 471 (Ill. 2004). The same analysis of Plaintiff's claim for conspiracy under 42 U.S.C. §§ 1983 and 1985 applies here: Plaintiff has failed to allege any specific facts supporting the existence of a conspiracy. Count V is dismissed with prejudice.

### C. Plaintiff Fails to State a Claim for False Imprisonment or Arrest (Count VI)

Plaintiff also alleges a claim for false arrest and imprisonment. Plaintiff principally cites U.S. Supreme Court and federal court cases in this count, all involving the Fourth Amendment.[6]

---

[6] In particular, Plaintiff cites to *Hayes v. Florida*, 470 U.S. 811 (1985) (Fourth Amendment challenge to arrest) and *Weber v. Cranston Sch. Comm.*, 212 F.3d 41 (1st Cir. 2000) (Fourth Amendment claim under 42 U.S.C. § 1983 concerning retaliatory firing). The two other federal cases cited by Plaintiff concern separate issues under the Fourteenth Amendment — a claim against reevaluation of a handicapped student by a school board, *see Carroll v. Capalbo*, 563 F. Supp. 1053 (D.R.I. 1983), and a Fourteenth Amendment challenge to jury selection, *see Powers v. Ohio*, 499 U.S. 400 (1991). Plaintiff's citation to a lone Rhode Island state case, *Dyson v. City of Pawtucket*, 670 A.2d 233 (R.I. 1996), is inapplicable because Rhode Island law, as explained above, does not apply to this action.

Presumably Plaintiff is attempting to bring a false arrest or imprisonment claim against the City of Waukegan under *Monell*. But, as detailed above, Plaintiff identifies no policy, custom, or final policy-making authority that would form the legal basis for a *Monell* claim of false arrest or imprisonment against the City of Waukegan. Count VI is dismissed with prejudice.

### D. The Federal Privacy Act Applies Only to Federal Agencies (Count VII)

Plaintiff also appears to be proceeding, once more, under the Federal Privacy Act. The Court previously dismissed Plaintiff's claims under the Federal Privacy Act because that Act only directs government agencies to establish safeguards to protect individuals against the disclosure of confidential records. 5 U.S.C. § 522a; *see also Polchowski v. Gorris*, 714 F.2d 747, 752 (7th Cir. 1983). The Federal Privacy Act's directive applies only to "agencies of the United States Government." *Plchowski*, 714 F.2d at 752. The City of Waukegan is not a federal agency. Plaintiff fails to state a claim under the Federal Privacy Act.

In his Memorandum in Opposition, Plaintiff cites to a number of federal interstate and Illinois criminal stalking statutes: 18 U.S.C. §§ 2261 and 2261A; 720 Ill. Comp. Stat. 5/12-7.3 and 5/12-7.5; 720 Ill. Comp. Stat. 135-1-1; and 720 Ill. Comp. Stat. 135/1.2. *See* Pl.'s Mem. Opp'n 2. But, as the City of Waukegan points out, these criminal statutes do not provide a basis for civil liability. *See* Def.'s Reply 1–2. Furthermore, Plaintiff's claims under these stalking statutes must be dismissed because a "Plaintiff cannot amend his complaint by raising new claims in response to the motion to dismiss." *Wooley v. Jackson Hewitt, Inc.*, 540 F. Supp. 2d 964, 972 (N.D. Ill. 2008) (citing *Thomason v. Nachtrieb,* 888 F.2d 1202, 1205 (7th Cir. 1989)). Count VII is dismissed with prejudice.

### E. Plaintiff Fails To State a Claim for Trespass (Count VIII)

Plaintiff also brings a claim for trespass. Plaintiff cites Rhode Island law for his trespass claim but, as detailed above, none of the events detailed in Plaintiff's Third Amended Complaint take place in Rhode Island, and there is no other basis for Rhode Island law to apply. *See supra* n.3. Plaintiff's Third Amended Complaint also makes passing reference to *Payton v. New York*, 445 U.S. 573, 596–7 n.45 (1980). *Payton* concerned warrantless entry claims brought under the Fourth Amendment. Any claim under the Fourth Amendment against the City of Waukegan, however, would be properly brought as a *Monell* claim under 42 U.S.C. § 1983. As detailed above, any claim under the Fourth Amendment against the City of Waukegan fails to meet the requirements of *Monell* due to Plaintiff's failure to identify a policy, practice, or custom as the "moving force" behind the constitutional violations. The Court can discern no other basis for a trespass claim against the City of Waukegan. Count VIII is dismissed with prejudice.

### F. Plaintiff's Third Amended Complaint Fails to Meet Rule 8

Plaintiff's Third Amended Complaint is further subject to dismissal for failing to meet the pleading standards of Rule 8. Under Rule 8 a complaint must set forth a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). "The rules do not require unnecessary detail, but neither do they promote vagueness or reward deliberate obfuscation." *E.E.O.C. v. Concentra Health Serv., Inc.*, 496 F.3d 773, 780 (7th Cir. 2007). One purpose of Rule 8 is to provide "fair notice" to defendants of the claims against them. *Id.* But Plaintiff's Third Amended Complaint often does not give "fair notice" to Defendant of what the claims are or their basis. At times, the Third Amended Complaint is vague and difficult to follow. At other times, the Third Amended Complaint does not identify which Defendants' actions form the basis of which particular claims. It therefore falls short of

the general goal of Rule 8: a complaint that "puts the defendant on notice of the plaintiff's claims." *Standard v. Nygren*, 658 F.3d 792, 799 (7th Cir. 2011). The Court has allowed Plaintiff three chances to plead his case. While *pro se* litigants' pleadings are held to a less stringent standard than pleadings from litigants represented by counsel, see *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996), "repeated failure to cure pleading deficiencies may be grounds to deny amendment." *U.S. ex rel. Grenadyor v. Ukranian Vill. Pharmacy, Inc.*, 895 F. Supp. 2d 872, 882 (N.D. Ill. 2012). The Court finds that a fourth attempt at amendment here is not justified.

## IV. Conclusion

For the reasons provided herein, the Court grants the City of Waukegan's motion to dismiss [153]. Plaintiff's Third Amended Complaint is dismissed with prejudice. Civil case terminated.

**SO ORDERED**                   **ENTER: 3/3/15**

_____
**JOHN Z. LEE**
**United States District Judge**